# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.                Case No. 13-CR-99

**BODIE WITZLIB**
   **Defendant.**

## DECISION AND ORDER

On May 21, 2013, the government charged defendant Bodie Witzlib in a four count indictment with (1) engaging in the business of manufacturing and dealing in explosive materials without a license, (2) transporting or shipping explosive materials without a licence, (3) possessing explosive materials as a felon, and (4) storing explosive materials contrary to law. The case was originally assigned to District Judge Stadtmueller.

On May 29, 2013, defendant appeared for arraignment with retained counsel and was ordered detained. On June 26, 2013, counsel moved to withdraw, and the following day defendant filed a letter indicating he wanted to represent himself. On July 2, 2013, Magistrate Judge Goodstein granted the motion to withdraw and allowed defendant to proceed pro se.

On July 16, 2013, defendant moved to adjourn the trial, previously set for July 29, 2013. Judge Stadtmueller denied that motion on July 17, then recused himself the following day. The case was reassigned to me, and I set it for status on July 23. On July 22, 2013, defendant filed various pro se motions, including a motion to suppress evidence. At the July 23, 2013 status, defendant agreed to accept appointed counsel, and I held the pro se motions in abeyance.

On August 27, 2013, with the concurrence of the parties, I ordered a competency exam.

committing defendant to the custody of the Attorney General for that purpose. Meanwhile, defendant's relationship with appointed counsel soured, and on December 20, 2013, I granted counsel's request to withdraw and allowed defendant to proceed pro se; I also found him competent. Defendant subsequently requested and I granted continuances so he could conduct an investigation and prepare. On February 18, 2014, the government filed a response to defendant's previously filed motions, including the motion to suppress, but on May 22, 2014, defendant withdrew those motions.[1]

On June 3, 2014, defendant filed a motion to suppress, motion for an evidentiary hearing, and motion for polygraph examination. (R. 122, 123, 124.) At a June 5, 2014 status hearing, he requested time to obtain an attorney, and I continued the case to June 23 and then July 14 for that purpose.[2] On July 14, 2014, defendant filed motions to amend his motions to suppress and for an evidentiary hearing (R. 144, 145), and a motion to depose a witness pursuant to Fed. R. Crim. P. 15 (R. 148).

At the July 14 status, defendant indicated that his efforts to obtain counsel had failed, but he did not want appointed counsel. He requested an evidentiary hearing on the motion to suppress. The government responded that a hearing was not necessary. I indicated that I would review the materials, determine whether a hearing was needed, and issue an order. I set the case for status on July 29, 2014.

I will grant defendant's motions to amend his previous filings. However, I deny the

---

[1]Defendant has filed numerous other papers in this case, some purporting to be from "Burt Olson Pro Se Counsel." I have not detailed all of those filings herein.

[2]On July 2, 2014, defendant filed typed versions of the hand-written motions filed on June 3, 2014. (R. 135, 136, 137.)

2

motion to suppress without a hearing. I first set forth the pertinent facts, then address the standards for obtaining an evidentiary hearing, and, finally, address the merits of defendant's suppression motion based on the undisputed material facts.

## I. FACTS

Defendant moves to suppress evidence seized from a residence he shared with his grandmother, Ruth Witzlib, in Germantown, Wisconsin. I take the following facts from defendant's motion and supporting exhibits. The motion includes a detailed recitation of defendant's personal history; I focus on the facts relevant to the suppression issue. (See R. 135 at 11-14; R. 127 Ex. 10, 12 & 20.)

On Tuesday, April 30, 2013, at about 1:50 p.m., defendant's aunt, Mary Witzlib, went to the Germantown police department and spoke to Detective Penny Schmitt, reporting that she was concerned about defendant. She said he had mental health issues, did not take medications, and held anti-government beliefs. She indicated that she and her husband Dennis lived next door to Dennis's mother Ruth, and that defendant had lived with Ruth for several years.[3] Mary stated that she was afraid of defendant, and that he was unpredictable. Schmitt was aware of defendant from previous contacts with the Germantown police and area departments.

Mary indicated that on Saturday, April 27, she took Ruth to church, and while they were at services Dennis entered Ruth's house to check on the house. Dennis told Mary that he went into the basement and saw what he believed to be M80's. Mary related that on April 29 Dennis confronted defendant about the items in the basement, and defendant told Dennis that he was

---

[3]To avoid confusion, I hereafter use first names for defendant's relatives.

3

not going to do anything with the M80's, that he was starting a business, and was going to sell the items.

Schmitt asked Mary to have Dennis come to the police station to provide a first hand account. At about 3:05 p.m. that day, Dennis appeared at the Germantown police department, and he confirmed that on April 27 he went into the basement of the residence, where he observed what he believed to be the materials and finished product of M80 explosive devices. Dennis stated that he was aware defendant was making M80's in the residence, as he observed defendant doing so about a month earlier in the family room. At that time, Dennis told defendant he needed to get everything out of the house, as it was illegal. Dennis did not know defendant had moved the materials into the basement. Dennis provided a description of the layout of the basement and where the explosives were located. He further indicated that he had seen canisters that said something to the effect of "Military" on them, as well as a black powder on the workbench. He believed that there were a few hundred to 1000 finished M80's in the basement. Dennis stated that on April 29 he asked defendant to remove the items from the residence, but he was not sure defendant had done so.

Schmitt contacted the ATF for assistance and was connected with the agent who specialized in explosive devices, Jody Keeko. Schmitt briefed Keeko, who indicated that she would respond to the Germantown police department, as well as contacting the Milwaukee County bomb unit for additional information and assistance.

At about 3:50 p.m., Schmitt contacted the Washington County District Attorney's office and spoke to an Assistant District Attorney ("ADA") about whether a warrant would be necessary. It was determined that the officers would attempt to obtain consent from Ruth, the

homeowner, prior to seeking a warrant.[4]

At about 5:15, Schmitt met with additional Germantown officers, Special Agent Keeko, Special Agent George Lauder, and members of the Milwaukee County bomb unit, briefing them on the investigation. At about 5:40 p.m., Schmitt and Keeko went to Dennis and Mary's residence, asking if Dennis could get into his mother's residence and check the basement. Dennis did not believe he could come up with an excuse to do so. He did enter the living room and garage, observing nothing in those areas.

At about 7:30 p.m., Schmitt and Keeku went to Ruth's house in an attempt to make contact with defendant and Ruth. At the front door, Schmitt told defendant they were there to investigate a hit and run accident, asking him to step outside, where they were joined by another officer, Moschea. Schmitt then admitted they weren't there about a hit and run, and asked, "is there anything in the house we should know about?" (R. 135 at 12.) Defendant told the police to get off his property and asserted his constitutional rights. Schmitt replied that they were responding to a fireworks complaint, and that they had the right to do a "safety check" of the residence, at which point the officers walked in the front door. Defendant asked Moschea, who remained outside with him, if he could return to the residence, but Moschea indicated he was being detained. Upon entering the residence, Schmitt and Keeku encountered Ruth, and she consented to a search.[5]

---

[4]In his motion, defendant states that Schmitt was "unable to obtain a warrant." (R. 135 at 12.) However, he presents no evidence that she applied for one at that time.

[5]Defendant's version of the events set forth in the attached text differs in some respects from Schmitt and Keeko's reports. For instance, the reports do not include the alleged subterfuge in getting defendant out of the house. Nor do the reports specifically indicate that the officers entered to do a safety check. Rather, the reports simply state that Schmitt and Keeko spoke with Ruth inside the residence, while Moschea stood by with defendant in the

5

Keeko and members of the Milwaukee County bomb unit then searched the residence, with Keeko confirming that there were explosive devices consistent with M80's in the basement. Both ATF and the bomb unit recommended that the residence and nearby homes be evacuated. The police exited the house after about ten to fifteen minutes. Schmitt arrested defendant, and Moschea transported him to the Germantown police department, where he gave a Mirandized statement. Officers secured the residence overnight, making arrangements to remove the explosives the next day. On May 1, 2014, the ATF obtained a federal search warrant for the residence.[6]

## II. REQUEST FOR EVIDENTIARY HEARING

### A. Applicable Legal Standard

Hearings on motions to suppress are not granted as a matter of course. United States v. Villegas, 388 F.3d 317, 324 (7th Cir. 2004). "District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion." United States v. Curlin, 638 F.3d 562, 564 (7th Cir. 2011). "The defendant bears the burden of both identifying a definite disputed factual issue, and demonstrating its materiality." Id.

### B. Analysis

In his motion for a hearing, defendant states:

---

driveway. The reports state that Schmitt and Keeko explained to Ruth that they were there due to "safety concerns," and that Ruth allowed the officers to search the residence to locate the explosives. (R. 127 Ex. 12 at 3-4; R. 127 Ex. 20 at 2.) Defendant contends that Ruth was pressured to sign the consent form; the reports indicate that she freely consented. For purposes of deciding this motion, I will accept defendant's version of these events.

[6]The police also searched the residence of defendant's other grandmother, but defendant does not in the instant motion challenge that search.

6

> The defense trusts that sufficient facts and documents supporting those facts have been provided to the court in support of the defense's "Motion to Suppress Evidence," and a ruling by the court for suppression of that evidence in question, obtained through unlawful means, can be made without a suppression hearing. The defense has clearly established the fact that the defendant's Constitutional Rights were violated and that the defendant was intentionally deprived of constitutionally protected liberty by those violations of government officials in the defense's "Motion to Suppress Evidence." The defense trusts the facts set before the court clearly show this truth and for this reason a suppression hearing should not be necessary.

(R. 123 at 2; R. 136 at 1.)

Nevertheless, in the cover letter to his July 14 filings, defendant indicates an evidentiary hearing should be granted. (R. 149 at 4.) In his motion to amend the motion for an evidentiary hearing, defendant attempts to comply with this court's Local Rule 12(c).[7] (R. 144.) In the notice of amendment, defendant lists the disputed material facts as follows:

1. Contradictory police reports.

2. Chronology of events on day of incident.

3. Actual events on day of incident.

4. Missing events on the timeline of events.

5. Information left out of the police reports.

(R. 144, Notice of Amendment at 2.) These vague and conclusory statements are insufficient to obtain a hearing. See United States v. Randle, 966 F.2d 1209, 1212 (7th Cir. 1992)

---

[7]"If a motion seeks an evidentiary hearing, the movant must provide in the motion a short, plain statement of the principal legal issue or issues at stake and specific grounds for relief in the motion and, after a conference with the non-movant, provide a description of the material disputed facts that the movant claims require an evidentiary hearing. The movant also must provide an estimate of the in-court time necessary for the hearing. The non-movant may file a response opposing an evidentiary hearing within 3 days after filing of a movant's motion seeking an evidentiary hearing. The non-movant's response must include a short, plain statement of why that party believes that an evidentiary hearing is unnecessary." Crim. L.R. 12(c) (E.D. Wis.).

7

("Reliance on vague, conclusory allegations is insufficient."). Defendant correctly notes that the government bears the burden of justifying a warrantless search, but this does not relieve him of his burden of justifying a hearing.

In the motion to suppress, defendant alleges that the police reports concerning the events of April 30 and May 1, 2013, are filled with contradictions, untruths, and omissions (R. 135 at 20-22), but he points to few specifics and nothing material. He notes that the reports do not set forth his conversation with the officers in the driveway, including the ruse used to get him outside. As indicated in note 5, however, I will assume for purposes of deciding the motion to suppress that defendant's version of those events is correct. Defendant further contends that Mary and Dennis, whom he refers to as the "informants," lied in several respects, including when they said he paid Ruth no rent. That is not material to the exigent circumstances justifying the entry. He complains that Officer Moschea did not write a report, but the Constitution did not require him to do so.

Defendant also makes reference to a Franks hearing. (R. 143 at 5.) However, he fails to make a substantial preliminary showing that the authorities deliberately or recklessly made material misrepresentations in the affidavit used to procure the search warrant, as he must to obtain such a hearing. E.g., United States v. Currie, 739 F.3d 960, 963 (7th Cir. 2014). He moves to depose Ruth under Fed. R. Crim. P. 15, but he fails to specify what she would contribute to resolution of the motion to suppress.[8] Defendant has further requested subpoenas for various witnesses, but he does not specify the material testimony they would provide. Accordingly, he is not entitled to a hearing.

---

[8] In a Notice of Deposition (R. 151), defendant states that Ruth has a right not to answer questions and to assert the Fifth Amendment.

8

## III.  DECISION ON MOTION TO SUPPRESS

Based on the undisputed material facts, defendant is not entitled to suppression.  I will accept that defendant had a legitimate expectation of privacy in the Germantown residence, that he refused to consent to a search, and that Ruth's consent, even if valid, could not trump defendant's refusal.  See Georgia v. Randolph, 547 U.S. 103, 106 (2006).  Nevertheless, the government has established that exigent circumstances supported the entry.[9]

Under the exigent circumstances exception, "a warrantless entry into a dwelling may be lawful when there is a pressing need for the police to enter but no time for them to secure a warrant."  Sutterfield v. City of Milwaukee, 751 F.3d 542, 557 (7th Cir. 2014). "Whether the exigent circumstances exception justifies warrantless action is judged by an objective standard: [the court asks] whether it was reasonable for the police officers on the scene to believe, in light of the circumstances they faced, that there was a compelling need to act and no time to obtain a warrant."  Id.

Courts have identified four general categories of exigencies: (1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others.  United States v. Rohrig, 98 F.3d 1506, 1515 (6th Cir. 1996).  The present case falls into the fourth category.

"Exigent circumstances are frequently found when dangerous explosives are involved." United States v. Lindsey, 877 F.2d 777, 781 (9th Cir. 1989); see also United States v. Boettger, 71 F.3d 1410, 1415 (8th Cir. 1995) ("The Second, Third, and Sixth Circuits agree that the presence of potentially explosive chemicals can present a continuing danger justifying a

---

[9]The government set forth its theory in response to defendant's previous motion to suppress.  (R. 88 at 3-6.)

9

warrantless search and seizure of a residence."). In this case, the police faced a dangerous situation. Schmitt received recent, first-hand information that defendant had explosives in the basement of Ruth's home in a residential area. Dennis specifically expressed concern that he had seen black powder in the basement, which contained the water heater and furnace, which could ignite and cause an explosion, injuring or killing his infirm mother. (See R. 127 Ex. 10 at 12-13.) This would also create a serious risk to neighbors. Mary further indicated that she was afraid of defendant and concerned about his instability; Detective Schmitt was "aware of" defendant based on previous contacts.

Defendant argues that Dennis and Mary acted vindictively, that the police tricked him into leaving the house, and that there was no exigency because the officers sought consent to enter and did not act immediately upon receiving the tip. His arguments lack merit.

Defendant first contends that Dennis and Mary held a grudge against him and wanted him removed from Ruth's house. (R. 135 at 22-24.) However, their subjective motivations do not matter. The issue is whether a reasonable police officer could have reasonably believed, based on the information they provided, that there was a compelling need to act. Fitzgerald v. Santoro, 707 F.3d 725, 730 (7th Cir. 2013). Defendant admits virtually all of their material allegations regarding his activities in his grandmother's basement.

Second, defendant contends that the police acted in bad faith when they lied to get him out of the house (R. 135 at 25), but the police may use subterfuge in the investigation of crime. See United States v. Rutledge, 900 F.2d 1127, 1131 (7th Cir. 1990) ("Far from making the police a fiduciary of the suspect, the law permits the police to pressure and cajole, conceal material facts, and actively mislead – all up to limits not exceeded here."). Here, given their concerns about what defendant might do, it was reasonable to try to get him out of the house

10

without a commotion. (See R. 127 Ex. 10 at 11, Schmitt and Dennis discussing a way to get defendant out of the house due to concern he would do something.)

Third, defendant argues that the police did not approach this situation like an emergency. (See R. 135 at 25-28.) He points to Schmitt's statements during her interview with Dennis regarding "an angle for us to go in" and whether Ruth would give consent. (R. 135 at 26; R. 127 Ex. 10 at 9.) For the reasons set forth above, it was reasonable for Schmitt to act cautiously, given the information she had been provided. Defendant further argues that the officers' attempt to obtain consent once inside the house casts doubt on the exigency, but it was reasonable for the officers to seek Ruth's cooperation at that point rather than employing more confrontational methods. Defendant notes that the police waited 5-½ hours after receiving Mary's tip to enter, but this ignores Schmitt's efforts to obtain the assistance of explosives experts from the ATF and bomb squad before acting. In sum, the record shows that the police acted with all deliberate speed in trying to find a way into the house with minimal commotion, given Mary's concerns about defendant's stability and Dennis's concern about his mother. (See R. 127 Ex. 10 at 6, 10.) Defendant cites no authority in support of his claim that the police had to apply for a warrant right away,[10] and courts have held that in the context of explosives the mere passage of time does not eliminate the exigency. See Boettger, 71 F.3d at 1416-17. Defendant contends that the M80's in the basement could have been duds; obviously, the police had no way of knowing that.

---

[10]Defendant claims that the police tried to obtain a warrant before they went to the house but were unable to do so. However, the exhibit he cites flatly contradicts this claim. Schmitt contacted an ADA about whether a warrant was necessary, and it was determined the officers would try to obtain consent. (R. 127 Ex. 12 at 3.) There is no evidence in the record that the police applied for a warrant and were denied.

11

## IV.  CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motions to amend his motions to suppress and for an evidentiary hearing (R. 144, 145) are **GRANTED**.

**IT IS FURTHER ORDERED** that defendant's motions for an evidentiary hearing and to suppress evidence (R. 122, 123, 135, 136) are **DENIED**.

Dated at Milwaukee, Wisconsin, this 21st day of July, 2014.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge