# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                                            Case No. 13-CR-99

**BODIE WITZLIB**
    **Defendant.**

## DECISION AND ORDER

Defendant Bodie Witzlib pleaded guilty to manufacturing and dealing explosive materials without a licence, 18 U.S.C. §§ 842(a)(1) & 844(a), and on January 9, 2015, I sentenced him to time served (about 18 months) followed by two years of supervised release. The Seventh Circuit affirmed defendant's conviction on direct appeal. United States v. Witzlib, 796 F.3d 799 (7th Cir. 2015), cert. denied, 136 S. Ct. 919 (2016). On March 23, 2016, defendant filed a motion for early termination of his supervised release. I directed the government to respond and permitted defendant to reply. I now deny the motion.

## I. BACKGROUND

Defendant's aunt and uncle reported to the Germantown, Wisconsin Police Department that defendant was making M-80s in the basement of his grandmother's house. He lacked the federal license required for this activity. As the Seventh Circuit indicated, "Illegal manufacture of M-80s is at once common and highly dangerous because of the explosive potential of the pyrotechnic flash powder that is their principal ingredient." Witzlib, 796 F.3d at 800. The aunt further indicated that defendant held "anti-government beliefs," was unpredictable, and did not take the medications prescribed for his "mental health issues." Id. at 801. The police searched

the basement with the grandmother's consent, found about 1000 M-80s, and arrested defendant.

The government charged defendant in a four-count indictment with manufacturing and dealing explosive materials without a license, transporting and shipping explosive materials without a license, being a felon in possession of explosive materials, and storing explosive materials contrary to regulation. In the extended proceedings that followed, I ordered a competency evaluation, permitted defendant to proceed pro se after he discharged his attorneys, and denied his motion to suppress the evidence recovered from his grandmother's basement. Defendant ultimately entered a conditional guilty plea to manufacturing and dealing explosive materials without a license, reserving his right to appeal the denial of his suppression motion.

Prior to sentencing, the probation office prepared a pre-sentence report ("PSR"), calculating an advisory guideline range of 41-51 months' imprisonment (offense level 18, criminal history category IV). The PSR also included a detailed discussion of defendant's mental health issues. (PSR ¶¶ 66, 70-72, 81-89.) At the sentencing hearing, I adopted the facts and guideline calculations in the PSR.

Pursuant to the plea agreement, the government recommended 24 months in prison, followed by three years of supervised release. On consideration of the 18 U.S.C. § 3553(a) factors, I imposed a sentence of time-served, which amounted to about 18 months, followed by two years of supervised release. Defendant requested one year of supervision, but given his prior record and treatment needs I found a longer term necessary. As special conditions of supervised release, I ordered defendant to participate in the cognitive intervention program and a mental health treatment program. I viewed the mental health treatment condition as the

2

most important aspect of the sentence in assisting defendant in maintaining compliance and refraining from any future criminal conduct. (R. 241 at 20.)

Defendant unsuccessfully appealed the denial of his suppression motion. He did not challenge any aspect of his sentence on direct appeal.

## II.  DISCUSSION

Under 18 U.S.C. § 3583(e),

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) –
>
> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]

Accordingly, in order to receive early termination, the defendant must have completed at least one year of supervision, the government must have been given notice and an opportunity to be heard, and the court must find that termination is in the interest of justice based on the defendant's conduct and the pertinent sentencing factors under 18 U.S.C. § 3553(a). See United States v. Medina, 17 F. Supp. 2d 245, 245-46 (S.D.N.Y. 1998).

Defendant's supervision term began in January 2015, so he has served more than one year, and the government has been afforded a chance to respond. The issue is whether termination is warranted by defendant's conduct and the interest of justice.

The district court possesses wide discretion in making this determination. See United States v. Hook, 471 F.3d 766, 771 (7th Cir. 2006). However, courts have generally concluded that the conduct of the defendant sufficient to warrant termination should include more than mere compliance with the terms of supervised release, as that is what the court expects of all

3

persons on supervision. See Folks v. United States, 733 F. Supp. 2d 649, 652 (M.D. N.C. 2010 (collecting cases). Courts have tended to grant early termination in cases involving some new or unforeseen circumstance, which may include exceptionally good behavior, or where supervision hinders rather than fosters the defendant's rehabilitation. E.g., United States v. Pruitt, No. 06-30062, 2014 U.S. Dist. LEXIS 119990, at *8 (C.D. Ill. Aug. 28, 2014); United States v. White, No. 06-CR-50, 2012 U.S. Dist. LEXIS 151054, at *4 (E.D. Wis. Oct. 19, 2012) (collecting cases). The defendant bears the burden of demonstrating that early termination is warranted. White, 2012 U.S. Dist. LEXIS 151054, at *5.[1]

In his motion, defendant argues that early termination is warranted because he is not a threat to the community or a risk to re-offend; he was maliciously prosecuted for a small amounts of explosives and received a relatively harsh sentence compared to others convicted of similar offenses; he has enrolled in college, making good grades, in addition to working a few side jobs and helping care for his elderly grandmother; he has fulfilled the requirements of supervision, including completion of the cognitive program, and passed his drug tests; he has no outstanding restitution or fines; and he has filed lawsuits against people he perceives have violated his rights, an indication of his willingness to resolve matters civilly. On review of defendant's conduct and the pertinent 18 U.S.C. § 3553(a) factors, I conclude that supervision should continue as set.

First, the court expects those on supervision to follow the rules, abstain from illegal drug use, work or attend school, and attend to family responsibilities. See, e.g., United States v.

---

[1] The court need not hold a hearing before denying a termination motion. United States v. O'Hara, No. 00-CR-170, 2011 U.S. Dist. LEXIS 109097, at *8 (E.D. Wis. Sept. 16, 2011) (citing United States v. Reagan, 162 Fed. Appx. 912, 913 (11th Cir. 2006) (citing United States v. Nonahal, 338 F.3d 668, 671 (7th Cir. 2003)).

4

Smith, No. 09-CR-20, 2016 U.S. Dist. LEXIS 18467, at *3 (E.D. Wis. Feb. 15, 2016); United States v. Waters, No. 13-cr-725, 2015 U.S. Dist. LEXIS 135744, at *4 (N.D. Cal. Oct. 2, 2015); United States v. Thomas, No. 07-CR-72, 2012 U.S. Dist. LEXIS 126559, at *4 (N.D. Ind. Sept. 6, 2012). Defendant points to nothing unusual or extraordinary in his conduct. Nor does he indicate that his conditions are onerous, that supervision interferes with his rehabilitation, or that changed circumstances otherwise make the original term inappropriate.

Moreover, the supervision term has not been without incident. On April 6, 2015, the probation office filed a report indicating the following:

> On 3/17/15, Bodie Witzlib traveled to Kennedy Middle School in Germantown, Wisconsin, with the intention of passing out flyers to middle school students. When he arrived to the school, he identified himself as Burt Olson,[2] and began handing out flyers to students, staff, and parents. The flyers consisted of three pages. The first page was a picture of Mr. Witzlib. Above the picture, in bold print, was the word "danger!" Underneath the picture, also in bold print, was the phrase "communicable disease !!!!!" The first page of the flyer also contained the explanation "for proof, go to www.youtube.com, search for "Bodie Witzlib," and also provided Mr. Witzlib's full name, stating Mr. Witzlib is the carrier and spreader of the disease.
>
> The second page of the flyer was headlined "To any parent concerned with their child's health and safety." It then listed seven paragraphs explaining why someone should be concerned with their child's health. The paragraphs are listed in order, verbatim, below.
>
> "1. The man pictured on page one is 35 year old Bodie Byron Witzlib. Witzlib is a known vagrant that has been in and out of jails much of his adult life. This vagrant has assumed residence in the Germantown area and is frequenting a school in the Germantown school district, Kennedy Middle School.
>
> 2. Witzlib is a known carrier of a communicable disease and several females have fallen victim to Witzlib's predatory sexual carousing over the years. Witzlib is a threat to the community and a threat to students enrolled currently at

---

[2]After I allowed defendant to proceed pro se in this case, he at times sent the court documents under the name "Burt Olson, Pro Se Counsel." (R. 73; see also R. 90 at 17, R. 103 at 2.)

Kennedy Middle School in Germantown Wisconsin.

3. When our children go to school they have a right to enter a safe environment, free of hazards which could negatively affect their health and well being for years to come. Witzlib needs to go. Witzlib has refused to STOP frequenting the grounds of Kennedy Middle School. Witzlib claims that he attends basketball for exercise on Tuesday night. Whether or not Witzlib's intentions are sincere does not really matter. The fact is Witzlib is carrying a disease, the disease is communicable, and all students that attend Kennedy Middle School are now at risk because of Witzlib's presence. Period.

4. Females who have been infected by Witzlib: (1) [A.F.] (2) [K.F.] (3) [C.B.] (4) [K.D.], and others. We have confirmed cases of infection and our public health officials are failing to protect the community. Witzlib is a monster, all he cares about is having sex with as many good looking women as possible. Witzlib's radical vagrant lifestyle of unchecked promiscuity is putting our children at risk to infectious disease.

5. The infectious disease Witzlib is carrying is present in all of his body fluids; blood, saliva, urine, semen, and sweat. Witzlib has admittedly bled on the floor of gymnasiums, spit in bubblers, dripped sweat on the floor and used the rest room areas of school zones. Witzlib will not STOP his intrusions into schools. There needs to be a public outcry to challenge Witzlib's brazen audacious intrusions.

6. Join me in protecting the health and safety of the community and the health of our children, and sign the petition to indefinitely restrain the man pictured on page one. The petition will be submitted to the Washington County Circuit Court and the Court will subsequently issue an order restraining Witzlib pursuant to Wis. Stats. Chapters 252, 255, 813 and Wis. Stats. 1.11, 291.85 & 291.87.

7. As soon as we have 50 names, we will submit the petition to the court. Please do not sign the petition twice. We need as many names as possible, 200 if possible. Please circulate the petition to any and all concerned parents who have children currently attending Kennedy Middle School. Turn the petition by gathering signatures or simply signing the form yourself on page 3, then mailing the signed form to the address listed on page 3. There is no time to wait; the health and safety of our children is at risk."

The third paragraph of the flyer was titled "Petition to Protect Kennedy Middle School Students from a Legitimate Heath (sic) and Safety Hazard". There was then a statement stating "by signing this petition, I am voicing my support for restraining Bodie B. Witzlib from frequenting Kennedy Middle School or any other school grounds in the Germantown School District for any reason. Mr. Witzlib is a known carrier of a communicable disease. We request that Washington

6

> County issues an indefinite restraining order against Witzlib immediately." It then provided a table with 24 rows for someone to sign the petition. The table includes five columns for a signature, date, name, address (optional) and email. Underneath the table is a paragraph which states "Please return signed form with as many parent signatures as possible ASAP to: Burt Olson, 556 Colgate Road, Colgate, WI 53017 or scan and email signed petitions to BurtOlson@yandex.com. All accumulated records will be public information. If you want a list or copy of the petition or have any questions write to 'Burt Olson' at the above listed address."
>
> School administrators observed Mr. Witzlib handing out the flyers and asked him to leave school property. Mr. Witzlib left the property when asked. Administrators also attempted to take the flyers from children prior to them leaving school. However, many children and parents left school property with the flyers. Approximately 30 minutes after Mr. Witzlib left the school, the school was contacted by several parents who were concerned about Mr. Witzlib's presence at the school, and the possibility he may be carrying a communicable disease. Officers from the Germantown Police Department were contacted, and they met with Mr. Witzlib at his residence. Officers cited Mr. Witzlib for Disorderly Conduct based on his actions at the school and the commotion it caused when concerned parents contacted the school. Mr. Witzlib provided a statement to officers whereby he admitted to circulating the petition in an attempt to bring awareness to a public safety hazard. He indicated the government is denying medical care for his condition and is refusing to diagnos[e] him. He circulated the petition in an effort to bring attention to the fact he believes he has a severe disease and is being improperly diagnosed and treated. Furthermore, he denied being disorderly, stating he was on public property, after school, and was doing a public service in good faith. He indicated he was being attacked by corrupt government officials and crooked medical personnel for no reason. He felt government corruption, namely covering up his communicable disease, is depriving him of life, liberty, and the pursuit of happiness. He further feels his constitutional and human rights are being violated.

(R. 244 at 1-2.) The probation office, with the concurrence of the government, recommended that I take no action at the time as defendant had been referred for mental health services. (Id. at 3.) In his reply brief in support of the early termination motion, defendant denies that he violated any laws by circulating a legitimate petition on public property. On review of the probation report, I agreed that this conduct required no response from the court (other than to continue supervision so that defendant's mental health issues could be addressed). (Id. at 3-

7

4.) I continue to hold that view.[3]

Second, continued supervision is warranted under the 18 U.S.C. § 3553(a) factors. In considering defendant's history and characteristics, 18 U.S.C. § 3553(a)(1), he has a fairly extensive prior record, including convictions for criminal damage to property in 2000, obstructing or resisting an officer and bail jumping in 2000, hit and run in 2001, operating after revocation in 2002, disorderly conduct with use of a dangerous weapon in 2002, another criminal damage case in 2002, another resisting or obstructing an officer case in 2006, two more operating while revoked cases in 2006, fleeing an officer in 2007, disorderly conduct and criminal damage in 2007, disorderly conduct in 2010, and carry/keep/use a shooting device on public grounds in 2011. (PSR ¶¶ 35-47.) Given this record, two years of supervision is appropriate to ensure monitoring in order to protect the public and deter further violations of law. 18 U.S.C. § 3553(a)(2)(B) & (C).

Defendant's history is also significant for mental health issues. The PSR described his 2007 fleeing case as follows:

> According to the criminal complaint, on January 3, 2007 at approximately 4:25 p.m., the Shawano Police Department received a call regarding a reckless driver. The complainant indicated they had seen the vehicle go into a ditch, hit a sign, drive erratically back onto the highway and almost hit the complainant. The Shawano Police located the vehicle at a gas station, noting front end damage. No one was in the vehicle and the defendant was inside the gas station. As the defendant exited the gas station, he was confronted by one officer, whom he avoided. Mr. Witzlib hurried back to his vehicle and left. The Shawano Police pursued the defendant's vehicle. As the chase continued, the Shawano County Sheriff's Department took the lead. When the defendant passed the Spinning Wheel restaurant, he drove into the parking area and down a boat landing onto

---

[3]In another report filed on February 4, 2016, the probation office indicated that defendant arrived late for one cognitive intervention class and missed another class; however, he made those classes up with no further misses, completing the program on January 15, 2016. I again took no action in response to this report. (R. 249.)

8

the ice of Shawano Lake. The officer noted he did not pursue the defendant onto the ice given the conditions. The defendant drove approximately one mile onto the ice before the officer observed the vehicle splash into the water and become submerged. The Shawano County Sheriff's Department and Fire and Rescue retrieved Mr. Witzlib from the lake. The Shawano Police resumed their investigation by meeting Mr. Witzlib at the Shawano Medical Center. A preliminary breath test revealed all zeros. Mr. Witzlib was asked why he ran. He stated he thought there was a conspiracy against him. He stated President Bush, Dick Cheney and Condoleezza Rice had a conspiracy against him. He stated he was thinking of suicide and that is why he went onto the lake. Once his vehicle went into the water he decided that was not what he wanted to do and he did not want to die. He jumped out of his vehicle and got himself back onto the ice. The complaint noted Mr. Witzlib was medically cleared at the emergency room. He was arrested and transported to the jail.

(PSR ¶ 44.) The PSR further indicated that defendant had undergone evaluations and treatment for mental health or emotional issues since he was a child. (PSR ¶ 81.) As an adult, he was assessed in 2001 and again in 2007 as part of his criminal cases. In 2008, he participated in outpatient counseling through the Washington County Mental Health Center because his probation agent made him go. (PSR ¶ 82.) According to records, defendant was diagnosed with paranoid personality disorder, but he refused to participate in treatment. (PSR ¶ 86.) In 2013, pursuant to the competency evaluation I ordered in this case, the doctor diagnosed Other Specified Somatic Symptoms and Related Disorder and Other Specified Personality Disorder with Mixed Personality Features (Narcissistic, Antisocial, and Obsessive Compulsive Traits). (PSR ¶ 88.) During the pre-sentence interview, defendant denied suffering from any mental health or emotional problems. (PSR ¶ 81.) However, given this history, a two year supervision term remains appropriate to provide for needed correctional treatment. 18 U.S.C. § 3553(a)(2)(D).[4]

---

[4] I imposed no financial obligations, other than the mandatory $100 assessment, so 18 U.S.C. § 3553(a)(7) is not relevant.

Finally, to the extent that defendant argues for early termination because the prosecution was vindictive and/or the original sentence too harsh, 18 U.S.C. § 3583(e)(1) does not contemplate that the court will shorten the supervised release term to make up for a too-long prison term. Rhodes v. Judiscak, 676 F.3d 931, 933 (10th Cir. 2012). In any event, at the original sentencing hearing I considered defendant's argument regarding the sentences received by others convicted of explosives offenses. (R. 241 at 19.) Defendant presents no reason for me to reconsider that assessment. As indicated, his prison sentence fell far below the advisory guideline range, so he cannot persuasively argue for further consideration to avoid unwarranted disparity. 18 U.S.C. § 3553(a)(6). The original supervision term fell in the middle of the range recommended by the Sentencing Commission, U.S.S.G. § 5D1.2(a)(2); see 18 U.S.C. §§ 3553(a)(4) & (5), and was one year less than the term recommended by the government at sentencing.

### III. CONCLUSION

For these reasons,

**IT IS ORDERED** that defendant's motion for termination (R. 250) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 18th day of May, 2016.

/s Lynn Adelman
LYNN ADELMAN
District Judge

10